UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DAVID A. MITCHELL,

          Plaintiff,

v.

NANCY A. BERRYHILL,
ACTING COMMISSIONER
OF SOCIAL SECURITY,

          Defendant.

_____/

Civil Action No.: 16-12534
Honorable George Caram Steeh
Magistrate Judge Elizabeth A. Stafford

# REPORT AND RECOMMENDATION ON CROSS-MOTIONS FOR SUMMARY JUDGMENT [ECF. NOS. 14, 15]

Plaintiff David A. Mitchell appeals a final decision of defendant Commissioner of Social Security (Commissioner) denying his application for disability insurance benefits (DIB) under the Social Security Act. Both parties have filed summary judgment motions, referred to this Court for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons stated below, the Court **RECOMMENDS** that:

- the Commissioner's motion [ECF No. 15] be **GRANTED**;
- Mitchell's motion [ECF No. 14] be **DENIED**; and
- the Commissioner's decision be **AFFIRMED** pursuant to sentence four of 42 U.S.C. § 405(g).

## I. BACKGROUND

### A. Mitchell's Background and Disability Applications

Born July 12, 1965, Mitchell was 48 years old when he submitted his application for disability benefits on August 23, 2013. [ECF No. 10-5, Tr. 149]. He testified that he graduated from high school but with special education, and had previously worked as an electrician. [ECF No. 10-2, 38-40]. Mitchell's application indicated that he was disabled from back injury, attention deficit disorder, being HIV positive, depression, loss of vision, and anxiety, with an alleged onset date of November 4, 2008. [ECF No. 10-5, Tr. 149; ECF No. 10-6, Tr. 179]. For DIB purposes, his date last insured was December 31, 2013. [*Id.*, Tr. 83].

After the Commissioner initially denied his application, Mitchell requested a hearing, which took place on March 23, 2015, during which he and a vocational expert (VE) testified. [ECF No. 10-2, Tr. 34-52]. In an April 1, 2015, written decision, the ALJ found that Mitchell was not disabled. [*Id.*, Tr. 10-24]. The Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner, and Mitchell timely filed for judicial review. [*Id.*, Tr. 1-3; ECF No. 1].

**B.     The ALJ's Application of the Disability Framework Analysis**

DIB is available for those who have a "disability."  *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).  A "disability" is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).

The Commissioner determines whether an applicant is disabled by analyzing five sequential steps.  First, if the applicant is "doing substantial gainful activity," he or she will be found not disabled. 20 C.F.R. § 404.1520(a)(4).  Second, if the claimant has not had a severe impairment or a combination of such impairments[1] for a continuous period of at least 12 months, no disability will be found.  *Id.*  Third, if the claimant's severe impairments meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, the claimant will be found disabled.  *Id.*  If the fourth step is reached, the Commissioner considers its assessment of the claimant's residual functional capacity ("RFC"), and will find the claimant not disabled if he or she can still do past relevant work.

---

[1] A severe impairment is one that "significantly limits [the claimant's] physical or mental ability to do basic work activities."  § 1520(c).

*Id.* At the final step, the Commissioner reviews the claimant's RFC, age, education and work experiences, and determines whether the claimant could adjust to other work. *Id.* The claimant bears the burden of proof throughout the first four steps, but the burden shifts to the Commissioner if the fifth step is reached. *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

Applying this framework, the ALJ concluded that Mitchell was not disabled. At step one, he found that Mitchell had not engaged in substantial gainful activity since his alleged onset date. [ECF No. 10-2, Tr. 12]. At step two, he found that Mitchell had the severe impairments of "HIV positive; mild degenerative disk disease with pain; arthritis; a visual disorder; carpal tunnel syndrome ('CTS'); a fistula with hemorrhoids; headaches; a mild major depressive disorder; a generalized anxiety disorder ('GAD'); attention deficit hyperactivity disorder ('ADHD'); and a cognitive disorder." [*Id.*]. Next, the ALJ concluded that none of his impairments, either alone or in combination, met or medically equaled the severity of a listed impairment. [*Id.*, Tr. 13].

Between the third and fourth steps, the ALJ found that Mitchell had

the RFC to perform light work[2] except:

> [T]he claimant: can occasionally climb ladders, ropes, or scaffolds; can occasionally climb ramps and stairs; can frequently balance and kneel; can occasionally stoop, crouch, and crawl; is able to stand and or walk a combined four hours of an eight-hour workday; can frequently use his bilateral upper extremities for reaching, handling, and fingering; is limited to jobs not requiring binocular vision; is limited to simple, routine, and repetitive tasks in a work environment free from fast paced production requirements, such as moving assembly lines and conveyor belts, involving only work related decisions, with few, if any, work place changes; and is limited to occasional interaction with the general public, coworkers, and supervisors.

[ECF No. 10-2, Tr. 16-17]. At step four, the ALJ found that Mitchell was unable to perform his past relevant work as an electrician. [*Id.*, Tr. 21-22]. But with the assistance of the VE, the ALJ found at step five that he was able to perform work in the national economy as an inspector, packager, and laundry sorter, rendering a decision that he was not disabled. [*Id.*, Tr. 22-23].

---

[2] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. §§ 404.1567(b) and 416.967(b).

**II. ANALYSIS**

Pursuant to § 405(g), this Court's review is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made in conformity with proper legal standards. *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotation marks and citation omitted). Only the evidence in the record below may be considered when determining whether the ALJ's decision is supported by substantial evidence. *Bass v. McMahon*, 499 F.3d 506, 513 (6th Cir. 2007).

Mitchell argues that the ALJ misapplied the treating physician rule, disregarded the opinion of a consultative examiner, and rendered a credibility determination that was not supported by substantial evidence. The Court disagrees and recommends that the ALJ's decision be affirmed.

**A.**

From July 2009 to February 2012, Eric Kovan, D.O. signed disability forms indicating that Mitchell was "[u]nable to return to employment at this time" due to Mitchell's neck and back. [ECF No. 10-7, 293-307]. In letters

6

dated October 2010, August 2011, November 2011 and February 2012, Dr. Kovan elaborated that Mitchell's back pain was associated with L5-S1 radiculopathy and disc dessication, confirmed by an MRI, and that he suffered from depression and anxiety. [*Id.*, Tr. 265, 272]. Dr. Kovan reiterated in those letters that Mitchell was unable to work. [*Id.*]. None of the forms or letters signed by Dr. Kovan included any specific functional limitations or indications of what Mitchell was capable of doing despite his impairments. For that reason, Mitchell's argument that the ALJ erred by not affording controlling weight to Dr. Kovan's opinions is without merit.

The "treating physician rule" requires an ALJ to give controlling weight to a treating physician's opinions regarding the nature and severity of a claimant's condition when those opinions are well-supported by medically acceptable clinical and diagnostic evidence, and not inconsistent with other substantial evidence. *Gentry*, 741 F.3d at 727-29; *Rogers,* 486 F.3d at 242-43. But in order to qualify as a "medical opinion" entitled to controlling weight, the treating physician's opinion must reflect "judgments about the nature and severity of [the claimant's] impairment(s), including [his] symptoms, diagnosis and prognosis, what [he] can still do despite impairment(s), and [his] physical or mental restrictions." 20 C.F.R. §§ 404.1527; 416.927(a)(1). And the determination of whether Mitchell is

7

disabled is reserved for the Commissioner. *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004). So the ALJ was not required to give controlling weight to any of Dr. Kovan's opinions that Mitchell was unable to work.

Still, the ALJ was required to give Dr. Kovan's opinions careful consideration. Social Security Ruling 96–5p, 1996 WL 374183, at *2 (July 2, 1996), ("[A]djudicators must always carefully consider medical source opinions about any issue, including opinions about issues that are reserved to the Commissioner."). Assigning Dr. Kovan's opinions little weight, the ALJ reasoned that it was unclear if the doctor was familiar with the definition of "disability" under Social Security regulations. [ECF No. 10-2, Tr. 19]. The ALJ questioned whether the doctor meant only that Mitchell was not able to return to his prior employment as an electrician. [*Id.*]. The ALJ also relied upon Mitchell's admission in July 2014 that he had been working side jobs as an electrician. [*Id.*, Tr. 20].

Mitchell argues that the ALJ was speculating when he questioned whether Dr. Kovan meant that Mitchell was totally disabled from working, as opposed to being only disabled from his prior work. The Court disagrees. Dr. Kovan described Mitchell's chronic neck and back pain as resulting from a "workman's comp injury," and each of the forms he signed

8

indicated that Mitchell was "[u]nable to return to employment at this time." [ECF No. 10-7, Tr. 261, 273-307]. All of the forms and letters at issue were signed before Mitchell applied for DIB in August 2013, [*id.*], so it is reasonable to assume that they were written for the purpose of his claim for worker's compensation benefits. And unlike Social Security benefits, worker's compensation benefits in Michigan may be awarded to an employee who is only partially disabled, but who has lost full compensation. "[I]n a wage-loss system, such as Michigan's, once 'disability' is established, the extent of disability makes little or no difference. As long as the disability continues, however slight it may seem in terms of physical impairment, full compensation benefits will at least theoretically be due from the employer." *Sobotka v. Chrysler Corp.*, 447 Mich. 1, 16 (1994). So the ALJ had grounds to question whether Dr. Kovan intended to opine that Mitchell was totally disabled from all employment, or whether the doctor was referring only to his employment as an electrician that he was performing when he was injured.

It is also true that Mitchell admitted to performing side jobs as an electrician in July 2014, and indicated that he was having "difficulty finding full-time, permanent employment." [ECF No. 10-8, Tr. 426-27]. He said that he was earning under $1,000 a month, and the ALJ pointed out that

9

the monthly salary that constituted substantial gainful employment in 2014 was $1,070, so slightly more than Mitchell was earning. [ECF No. 10-2, Tr. 21].

In his motion, Mitchell accuses the ALJ of improperly relying upon partial statements such as that he was improving, and on a negative straight leg raising test, [ECF No. 14, PageID 749-50], but the ALJ offered no such reasoning when assigning little weight to Dr. Kovan's opinions. [ECF No. 10-2, Tr. 19]. The reasons that the ALJ did offer—that the question of whether Mitchell is disabled is reserved for the Commissioner, that it is unclear whether Dr. Kovan was even opining that Mitchell was disabled within the meaning of the Social Security Act, and that Mitchell performed side jobs that earned him a monthly salary approaching substantial gainful employment—are supported by the law and by the record. Remand based upon Mitchell's argument that the ALJ violated the treating physician rule is not warranted.

**B.**

Mitchell argues that the ALJ erred by disregarding the October 2013 mental health opinion of consultative examiner Gayle Oliver-Brannon, Ph.D. [ECF No. 10-7, Tr. 394-91]. With respect to all opinions from physicians and psychologists, ALJs are required to consider "the examining

10

relationship (if any); the length, nature and extent of the treatment relationship (if any); supportability of the opinion; consistency of the opinion with the record as a whole; the specialization of the source; and any other relevant factors which tend to support or contradict the opinion." *Brumbaugh v. Comm'r of Soc. Sec.*, 989 F. Supp. 2d 690, 695 n. 5 (S.D. Ohio 2013) (citing *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 375 (6th Cir. 2013)).

Here, Dr. Oliver-Brannon opined that Mitchell "may require ongoing mental health services to ensure successful full sustained employment. Employment does not seem to be a viable option in light of his health issues at this time and any future employment may require some restrictions or accommodations at the work site." [ECF No. 10-7, Tr. 397]. The ALJ gave little weight to this opinion, finding it to "contrast[ ] sharply with the other evidence in the record," and to be undermined by Mitchell's side work as an electrician. [ECF No. 10-2, Tr. 20]. Mitchell suggests that the ALJ erred by giving greater weight to the opinion of non-examining state agency consultant Michele Leno, Ph.D., than to Dr. Oliver-Brannon's opinion, and cites *Gayheart* in support. [ECF No. 14, PageID 750]. This argument is without merit.

While *Gayheart* did note, "As a general matter, an opinion from a medical source who has examined a claimant is given more weight than that from a source who has not performed an examination," 710 F.3d at 375, that is not a hard and fast rule. Rather, "'[i]n appropriate circumstances, opinions from State agency medical ... consultants ... may be entitled to greater weight than the opinions of treating or examining sources.'" *Blakley v. Comm'r Of Soc. Sec.*, 581 F.3d 399, 409 (6th Cir. 2009) (quoting Soc. Sec. Rul. 96–6p, 1996 WL 374180, at *3 (July 2, 1996). Dr. Leno found that Mitchell's mental impairment was established, but that he was "capable of meeting the demands of simple work activity," as evidenced by examination findings that he was fully oriented, had clear speech, had logical thought process, had adequate reality testing, showed a cooperative mood, and showed fair cognitive ability. [ECF No. 10-3, Tr. 60]. The ALJ gave Dr. Leno's opinion great weight because it was consistent with the medical record. [ECF No. 10-2, Tr. 21].

Since Dr. Oliver-Brannon was not Mitchell's treating physician, the ALJ was not required to give good reasons for assigning greater weight to Dr. Leno's opinion. *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 876 (6th Cir. 2007). The question thus becomes whether substantial evidence supports the ALJ's determination that Dr. Leno's opinion was more

12

consistent with the record, and assessing an RFC that was more consistent with her opinion. The Court finds that it does.

As noted, the ALJ's indication that Mitchell was working at a level approaching substantial gainful employment is supported by the record. As for the ALJ's determination that Mitchell was capable of simple work activity, the ALJ also cited the findings of psychiatrist Lauren Geriach, D.O., in August 2014. [ECF No. 10-2, Tr. 20, citing ECF No. 10-8, Tr. 468-69]. Her examination revealed that Mitchell had a neatly groomed and appropriate appearance; that he had a normal speech; that his mood was "ok", but his affect was full range and appropriate; that his thought process was linear, logical and goal-directed; and that there was no evidence of psychosis, unusual preoccupations or obsessions, and no suicidal or homicidal ideation. [*Id.*, Tr. 468]. Dr. Geriach found Mitchell to exhibit mild symptoms. [*Id.*, Tr. 469]. Numerous other psychiatric and neurological examinations likewise rendered unremarkable findings. [*See* ECF No. 10-7, 319, 336, 345, 354, 366, 375, 384, 401, 406; ECF No. 10-9, 677].

For these reasons, substantial evidence supports the ALJ's decision to assign great weight to Dr. Leno's opinion and find that Mitchell was capable of simple work.

13

## C.

Mitchell's final argument is that the ALJ erred in finding him not fully credible. Credibility determinations of witnesses are within the province of the ALJ and should not be disturbed "absent compelling reason." *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001). At the same time, "such determinations must find support in the record." *Rogers*, 486 F.3d at 241. An ALJ must explain the bases of his credibility determination, and the reviewing court should not be left to speculate as to the grounds for the ALJ's decision. *Cox v. Comm'r of Soc. Sec.*, 615 F. App'x 254, 261 (6th Cir. 2015). "[B]lanket assertions that the claimant is not believable will not pass muster, nor will explanations as to credibility which are not consistent with the entire record and the weight of the relevant evidence." *Rogers*, 486 F.3d at 248. Here, the ALJ's credibility determination was not error free, but it was supported by substantial evidence.

The ALJ cited several reasons for finding Mitchell not fully credible. First, he stated that Mitchell's daily activities were inconsistent with his complaints of disabling symptoms and limitations, and cited to Mitchell's function report. [ECF No. 10-2, Tr. 21, citing ECF No. 10-6, Tr. 213-19]. The ALJ did not specify the daily activities to which he was referring, and this Court's review of Mitchell's function report does not substantiate that

14

his reported activities or abilities are inconsistent with his claims of disability. To the contrary, Mitchell described himself as being unable to stand while showering; preparing only sandwiches and TV dinners for himself; being able to drive only short distances; spending his days watching television and movies, sitting and sleeping, and playing dice and cards; being limited in every category listed on the function report; being able to walk for only 100 feet before having to rest; and using crutches, a cane, and a brace. [ECF No. 10-6, Tr. 213-19]. So the ALJ's indication that Mitchell's function report evidenced that he was not disabled is not supported by the record.

But Mitchell's self-reports of extreme impairment are not consistent with other factors upon which the ALJ relied in assessing his credibility. The ALJ noted that Mitchell did not seek medical care for his HIV until July 2014, even though he was diagnosed with HIV in 2001 and worked until November 2008. [ECF No. 10-2, Tr. 21, citing ECF No. 10-8, Tr. 412]. The ALJ further reasoned that medication had been relatively effective in controlling Mitchell's symptoms. [ECF No. 10-2, Tr. 21]. There is evidence to support this finding. In November 2010, his depression was noted to be improving with Lexapro. [ECF No. 10-7, Tr. 271]. In June 2012, Mitchell was using medication intermittently, but was still described as "really doing

well" and "trying to function at a high level." [ECF No. 10-7, Tr. 260]. In September 2011, July 2012, February 2012, October 2012, January 2013, and October 2013, his back and musculoskeletal examinations were normal or showed only mild symptoms. [*Id.*, Tr. 345, 354, 366, 375, 406; ECF No. 10-9, Tr. 677]. In July 2014, he was described as having significantly improved from a psychiatric standpoint on Wellbutrin, and his gait and station were normal. [ECF No. 10-8, Tr. 412, 414]. And the Court agrees with the ALJ's final reason—that Mitchell had the self-reported capacity to work side jobs as an electrician, which he did because he was unable to find full-time, permanent employment. [ECF No. 10-2, Tr. 21].

Mitchell accuses the ALJ of setting an adversarial tone during the hearing by announcing that he appeared to have "something prepared to present." [ECF No. 14, PageID 752, citing ECF No. 10-2, Tr. 40]. But to the extent that the ALJ believed that Mitchell appeared incredible during the hearing, that was within the ALJ's right, as he was charged with the responsibility of observing and assessing Mitchell's demeanor and credibility. *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007).

Mitchell further takes issue with the ALJ relying upon the gap between when he was diagnosed with HIV and when he began treatment.

16

He argues that the gap was due to a lack of insurance. [ECF No. 14, PageID 752]. But as the Commissioner points out, Mitchell *was* receiving medical treatment between November 2008 and August 2013, the period between his alleged onset date and his date last insured. Yet he received no treatment for HIV during that period. And while Mitchell claims that he demonstrated that any gaps in treatment were due to his inability afford treatment, he cites only his testimony that he was currently receiving health insurance through "Obama Care." [*Id.*, citing ECF No. 10-2, Tr. 46]. Mitchell cites no evidence showing that he previously lacked access to healthcare.

Finally, Mitchell challenges the ALJ statement that, in December 2014, he was strong enough to require the police to taser him three times in order to subdue him. [ECF No. 10-2, Tr. 20]. The ALJ made that statement when rejecting a consultative examiner's October 2013 opinion that Mitchell required an ambulatory aid. [*Id.*, citing ECF No. 10-7, Tr. 400-01]. Mitchell argues that the ALJ did not know enough about the incident with the police to conclude that it reduced his credibility. [ECF No. 14, PageID 753]. Regardless, as noted, the records show numerous occasions in which Mitchell's musculoskeletal examinations were normal or showed only mild symptoms. [*Id.*, Tr. 345, 354, 366, 375, 406; ECF No.

17

10-8, Tr. 414; ECF No. 10-9, Tr. 677]. There was substantial evidence in the record for the ALJ to find that Mitchell does not need an ambulatory aid.

At bottom, this Court is not left to speculate as to the grounds for the ALJ's decision, and his reasoning is consistent with the record, as required. *Cox,* 615 F. App'x at 261; *Rogers*, 486 F.3d at 248. Therefore, there are no compelling reasons to disturb the ALJ's credibility determination and his decision should be affirmed.

### III. CONCLUSION

For the reasons stated above, the Court **RECOMMENDS** that the Commissioner's motion [ECF No. 15] be **GRANTED**; that Mitchell's motion [ECF No. 14] be **DENIED**; and the ALJ's decision be **AFFIRMED** pursuant to sentence four of 42 U.S.C. § 405(g).

s/Elizabeth A. Stafford
ELIZABETH A. STAFFORD
Dated: August 11, 2017                    United States Magistrate Judge

### **NOTICE TO THE PARTIES REGARDING OBJECTIONS**

Either party to this action may object to and seek review of this Report and Recommendation, but must act within fourteen days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b)(2). Failure to file specific objections constitutes a waiver of any

further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505 (6th Cir. 1991)*; United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  Filing objections which raise some issues but fail to raise others with specificity will not preserve all objections that party might have to this Report and Recommendation.  *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  A copy of any objection must be served upon this Magistrate Judge.  E.D. Mich. LR 72.1(d)(2).

Each **objection must be labeled** as "Objection #1," "Objection #2," etc., and **must specify** precisely the provision of this Report and Recommendation to which it pertains.  Not later than fourteen days after service of objections, **the non-objecting party must file a response** to the objections, specifically addressing each issue raised in the objections in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc.  The response must be **concise and proportionate in length and complexity to the objections**, but there is otherwise no page limitation.  If the Court determines that any objections are without merit, it may rule without awaiting the response.

**CERTIFICATE OF SERVICE**

     The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on August 11, 2017.

                                      s/Marlena Williams
                                      MARLENA WILLIAMS
                                      Case Manager